UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| COPTERLINE OY,<br>      Plaintiff, | :<br>:<br>: |
| v. | :    3:08-cv-1216 (WWE) |
| | : |
| HR TEXTRON, INC. and PLASMA<br>TECHNOLOGY INCORPORATED,<br>      Defendants. | :<br>:<br>: |

## MEMORANDUM OF DECISION ON
## DEFENDANT HR TEXTRON'S MOTION TO DISMISS

This action arises from a crash of an S-76C+ helicopter into the Baltic Sea on August 10, 2005. Plaintiff asserts claims against defendant HR Textron, Inc. for negligence, gross negligence, recklessness, failure to instruct/warn, violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), misrepresentation and breach of an express warranty. Plaintiff also asserts claims against defendant Plasma Technology Incorporation ("PTI"), but because PTI has not filed a motion to dismiss nor joined in HR Textron's motion, the Court need not address those counts. Now pending before the Court is HR Textron's Motion to Dismiss (Doc. #17).

The Court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1332.

## BACKGROUND

For purposes of ruling on a motion to dismiss, the Court accepts all allegations of the complaint as true.

Plaintiff Copterline Oy is a Finnish corporation that provided scheduled passenger helicopter flight service between Helsinki, Finland and Tallinn, Estonia beginning in 1999 via two Sikorsky S-76 C+ helicopters. On August 10, 2005, one

1

helicopter crashed soon after taking off from Tallinn, killing all twelve passengers and two crewmembers aboard.  As a result, Copterline ceased its service.  It has recently restarted its service.

HR Textron is a Delaware corporation with its principal place of business in California.  Plaintiff alleges that HR Textron designed the faulty component that caused the helicopter crash.  Further, plaintiff claims that HR Textron authored the overhaul specifications for that component.  PTI is a California corporation with its principal place of business in California.  It allegedly applied a plasma coating to the defective components.  Plaintiff claims that Helicopter Support Inc. ("HSI"), who is a party in a separate action before the Court, manufactured the component that caused the crash.

In September 1999, Copterline purchased the two helicopters from Sikorsky Aircraft Corporation.  Copterline flew twenty-eight daily scheduled flights each weekday and provided limited service on weekends.  By August 2005, Copterline was on pace to generate profits in excess of four million euros.

In August 2003, Copterline purchased a replacement main rotor servo actuator from HSI in Connecticut for one of the helicopters.  The main rotor servo actuators control the direction of the helicopter by changing the pitch of the rotor blades.  The sales invoice that accompanied the servo actuator warrantied that the servo actuator "complied in all respects with the material ordered.  It has been manufactured in accordance with the applicable specifications and approved data."

Copterline alleges that the servo actuator was designed by HR Textron and overhauled by PTI.  HR Texton, plaintiff further claims, was responsible for the Component Maintenance Manual that it published and that included instructions for

overhauling the servo actuator. After installing the servo actuator, Copterline conducted all recommended and required maintenance.

On August 10, 2005, the Copterline helicopter took off from Tallinn and reached an altitude of 1,500 feet. Minutes into the flight, plaintiff claims, the helicopter suddenly experienced a loss of pilot control, a pitching-up of the nose, a roll to the left and a series of rotations, culminating in the helicopter plunging into the Baltic Sea. Immediately after the crash, Estonian, Finnish and American officials began an accident investigation. The preliminary findings of that investigation suggested that the crash was caused by the failure of the servo actuator. Specifically, pieces of the plasma coating applied to the piston heads by PTI under specifications from HR Textron broke off. The plasma pieces clogged the return flow ports of the servo actuator's control valve, causing a blockage of the servo actuator and damaging the piston seals, resulting in an uncommanded extension of the servo actuator. That in turn caused the main rotor to stall, the helicopter to pitch up abruptly and roll to the left. The helicopter was left without proper control inputs to the main rotor system, rendering it immediately unflyable.

This action was commenced with the filing of the complaint on August 8, 2008. HR Textron was served with the complaint on August 28, 2008. HR Textron now moves for dismissal of the complaint arguing that the statute of limitations has lapsed on plaintiff's action.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support

3

thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007) (applying flexible "plausibility standard" to Rule 8 pleading), cert. granted, 128 S. Ct. 2931 (2008).

HR Textron moves for dismissal on the ground that the complaint was not served until after the three-year statute of limitations on this action had expired. Specifically, HR Textron argues that the summons and complaint were served upon it on August 28, 2008, three years and eighteen days following the accident and over five years after Copterline had allegedly purchased the replacement servo actuator.

In a diversity action, the Court looks to the forum state to determine the procedural rules that govern the commencement of an action for purposes of tolling the statute of limitations. See Walker v. Armco Steel Corp., 446 U.S. 740, 752-53 (1980). This holds true even where the tort did not occur in the forum state. See Norton v. Michonski, 368 F. Supp. 2d 175, 179 (D. Conn. 2005) (applying Connecticut statute of limitations to action arising from accident occurring in Massachusetts).

Connecticut courts have recognized that its statutes of limitations applies to causes of action grounded in the common law even if the substantive law to be applied

4

is not Connecticut law. In Moore v. McNamara, the Connecticut Supreme Court observed that a statute of limitations is procedural with regard to a common law cause of action, as contrasted to a statutory cause of action in which it is a substantive element. 201 Conn. 16, 22 (1986); see also Ecker v. West Hartford, 205 Conn. 219, 231-33 (1987). Therefore, as to plaintiff's common law claims, the Connecticut statute of limitations will apply regardless of the substantive law that should govern the dispute. See Landry v. Potter, 2005 U.S. Dist. LEXIS 1690 (D. Conn. Jan. 27, 2005) (applying Connecticut statute of limitations even if Massachusetts substantive law were to apply to action); Drakatos v. R. B. Denison, Inc., 493 F. Supp. 942, 944 n.1 (D. Conn. 1980) ("In suits with multi-state aspects, Connecticut courts (including a federal court sitting in Connecticut) apply Connecticut statutes of limitations.").

In Connecticut, an action is commenced with actual service of the summons and complaint on the defendant. Conn. Gen. Stat. § 52-45a. Courts have recognized that only the actual service upon the defendant prior to the tolling of the statute of limitations, and not some other informal service, satisfies section 52-45a. See, e.g., Hughes v. Equity Office Props. Trust, 245 Fed. Appx. 88, 89 (2d Cir. 2007) (affirming dismissal where because plaintiff was completing in forma pauperis motion and was unable to serve defendant in time); Converse v. General Motors Corp., 893 F.2d 513, 515 (2d Cir. 1990). Based on this standard, it is clear that this action was commenced on August 28, 2008 with the service of process upon HR Textron, more than three years after the date of the accident.

Plaintiff contends, therefore, that the operative date for commencing the statute of limitations is not the date of the accident, but later. Plaintiff argues that the statute of

limitations was tolled by (1) the Estonian government's sequestration of the helicopter following the accident; (2) HR Textron's public statements denying liability following the accident; and (3) HR Textron's actual knowledge of the cause of action during the liability period.  Moreover, plaintiff argues HR Textron had a continuing duty under CUTPA that tolled the statute of limitations.  Finally, plaintiff claims that whether Connecticut's law should apply is a factual determination that is premature at this stage.

Although the law of multiple jurisdictions could arguably govern this suit,[1] Connecticut statute of limitations will control plaintiff's common law claims of negligence, gross negligence, recklessness, failure to instruct/warn, misrepresentation and breach of warranty.[2]  Plaintiff does not dispute that the relevant statutes of limitations would have elapsed if they began to run at the date of the accident, regardless of whether its claim is based on the traditional common law cause of action or the Connecticut Product Liability Act.  Compare, e.g., Conn. Gen. Stat. § 52-584 (providing two year statute of limitations for negligence actions) with Conn. Gen. Stat. § 52-577a(a) (providing three year statute of limitations from date of injury on product liability claims).  Instead, plaintiff contends that the statutes of limitations did not begin

---

[1] Arguably, Connecticut law could apply as the location of the construction of the helicopter, Estonia law as the site of the accident, or California law as the location of defendants and where the faulty servo actuators were manufactured.

[2] Each of these causes of action existed at common law.  See Gentile v. Altermatt, 169 Conn. 267, 284 (1975) (negligence); Glorioso v. Police Dep't, 48 Conn. Supp. 10, 16 (2003) (gross negligence); Angiolillo v. Buckmiller, 102 Conn. App. 697 (2007) (recklessness); Dennis v. Pertec Computer Corp., 1996 U.S. Dist. LEXIS 18906, *9 (D.N.J. Nov. 18, 1996) (failure to warn); Nazami v. Patrons Mut. Ins. Co., 280 Conn. 619 (2006) (fraud/misrepresentation); Hinchliffe v. American Motors Corp., 184 Conn. 607, 615 (1981) (breach of warranty; noting that it has been replaced by the Uniform Commercial Code).

to run until later.

First, plaintiff argues that the Estonian government's sequestration of the helicopter following the crash tolls the statute of limitations. Plaintiff's reliance on City of New York v. Heckler, 742 F.2d 729 (2d Cir. 1984), however, is misplaced. In Heckler, the Court of Appeals for the Second Circuit acknowledged that where a plaintiff awaits a ruling by an administrative agency, such delay can toll the statute of limitations. Significantly, the Court remarked that "[w]here the Government's secretive conduct prevents plaintiffs from knowing of a violation of rights, statutes of limitations have been tolled until such time as plaintiffs had a reasonable opportunity to learn the facts concerning the cause of action." Id. at 738. Heckler, therefore, stands for the proposition that where the government's conduct, of which the plaintiff is not aware, prevents the plaintiff from asserting his rights, the statute of limitations is tolled. Heckler does not provide a global toll wherever the government prevents the assertion of rights. See also Barrett v. United States, 689 F.2d 324, 327 (2d Cir. N.Y. 1982) ("[T]he diligence-discovery rule has been applied where a plaintiff demonstrates that his injury was inherently unknowable at the time he was injured and where the Government conceals its negligent acts so that the plaintiff is unaware of their existence."). Because no government is a defendant to this action, the Estonian government's sequestration is irrelevant to the statute of limitations.[3]

---

[3] In addition, in the complaint, plaintiff states that preliminary findings of the government investigation indicated that the crash was caused by the servo actuators. Because plaintiff has not alleged any facts related to the sequestration that would excuse its failure to bring this action in due time, such sequestration is irrelevant to calculating the statute of limitations.

7

Plaintiff next claims that certain misleading public statements by HR Textron were made to deflect attention from potential liability and therefore tolled the statute of limitations. Under Connecticut law, "[i]f any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence." Conn. Gen. Stat. § 52-595. The Connecticut Supreme Court has stated that to toll the statute of limitations because of fraudulent concealment requires the plaintiff to demonstrate that defendants: (1) had actual awareness, rather than imputed knowledge, of the facts necessary to establish the plaintiff's cause of action; (2) intentionally concealed these facts from the plaintiff; and (3) concealed the facts for the purpose of obtaining delay on the plaintiff's part in filing a complaint on their cause of action. Falls Church Group, Ltd. v. Tyler, Cooper & Alcorn, LLP, 281 Conn. 84, 105 (2007). In addition, when a plaintiff alleges fraud in the complaint, Federal Rule of Civil Procedure 9(b) contains an additional requirement: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

Plaintiff's complaint alleges no facts that would allow plaintiff to demonstrate any fraudulent concealment on the part of HR Textron. Therefore, plaintiff cannot take advantage of this tolling mechanism. The Court will grant plaintiff leave to amend its complaint to assert such factual allegations, which must be stated with particularity pursuant to rule 9(b).

Finally, plaintiff argues that HR Textron had notice of the pending litigation prior to the expiration of the statute of limitations and that such notice serves to toll the

limitations period. As discussed above, notice is not the standard in Connecticut for tolling the statute of limitations; service of a summons and complaint is. Therefore, dismissal is warranted on plaintiff's common law claims for failure to bring them before the tolling of the statute of limitations.

Count V of plaintiff's complaint alleges a violation of CUTPA. This claim, which is explicitly based on Connecticut law, must also be dismissed. A claim under CUTPA "may not be brought more than three years after the occurrence of a violation." Conn. Gen. Stat. § 42-110g(f). Plaintiff argues that HR Textron had a continuing duty to plaintiff that survived the accident. HR Textron contends that any duty it may have owed to plaintiff ended, at the latest, with the accident on August 10, 2005.

Plaintiff's argument is unavailing. While claiming that HR Textron had an ongoing duty to warn plaintiff of any dangers posed by its servo actuator and to correct any such dangers, plaintiff fails to state when such duty would cease. Instead, plaintiff states that limitations period terminates once HR Textron's continuing duty does. With the destruction of the helicopter and the servo actuator, HR Textron no longer had any duty to maintain, warn or repair their product. See OBG Tech. Servs. v. Northrop Grumman Space & Mission Sys. Corp., 503 F. Supp. 2d 490, 511 (D. Conn. 2007) (observing that Connecticut law does not recognize that a mere ongoing contractual relationship between two sophisticated commercial entities tolls a statute of limitations). Regardless of whether HR Textron's duty ended with delivery of the servo actuators or the accident, this action was filed after the expiration of the limitations period. Accordingly, plaintiff's CUTPA claim will be dismissed.

**CONCLUSION**

For the foregoing reasons, defendant HR Textron's motion to dismiss (Doc. #17) is GRANTED. Plaintiff is permitted to amend its complaint in accordance with the terms of this ruling within ten days from the filing of this ruling. Should plaintiff fail to do so within that ten-day period, the Clerk is instructed to terminate defendant HR Textron.

Dated at Bridgeport, Connecticut, this 11th day of December, 2008.

/s/
Warren W. Eginton
Senior United States District Judge